USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/28/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE SHERWIN-WILLIAMS COMPANY,
and SHERWIN-WILLIAMS (CARIBBEAN)
N.V.,

                    Plaintiffs,

          v.

AVISEP, S.A. de C.V., and BEVISEP, S.A.
de C.V.,

                    Defendants.

---

No. 14-CV-6227 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

The Sherwin-Williams Company and its wholly owned subsidiary, Sherwin-Williams (Caribbean) N.V., bring this action against Avisep, S.A. de C.V. and Bivisep, S.A. de C.V. seeking a declaratory judgment that Plaintiffs satisfied their contractual obligations under the parties' Stock Purchase Agreement ("SPA" or "Original SPA") and Amended Stock Purchase Agreement ("Amended SPA"). Before the Court is Defendants' motion to dismiss for, *inter alia*, lack of personal jurisdiction. For the reasons that follow, Defendants' motion is granted.

## BACKGROUND

In 2012, Defendants sought to sell their industrial and decorative paint businesses in the United States, Canada, and Mexico to Plaintiffs. Compl. ¶ 26. Defendants, the largest manufacturer and seller of decorative coatings in Mexico, are incorporated under the laws of and have their principal places of business in Mexico. *Id.* ¶¶ 16–18. The Sherwin-Williams Company is an Ohio corporation with its principal place of business in Cleveland, Ohio and its wholly owned subsidiary, Sherwin-Williams (Caribbean) N.V., *id.* ¶ 14—formed exclusively to hold Defendants

assets if the deal was consummated, Decl. of Sean P. Hennessy ¶ 13—was organized and has its principal place of business in Curacao, Compl. ¶ 15. The negotiations of the SPA's terms were conducted by Defendants' counsel based in Mexico City and Plaintiffs' counsel based in Cleveland and Mexico. Defs.' Mem. 3. During negotiations, Plaintiffs conducted due diligence in Mexico City. *Id.*

On several occasions during the protracted negotiations, the parties met in New York. Decl. of Christopher M. Connor ¶ 7. These meetings occurred on February 16, 2012, April 9, 2012, August 3, 2012, and from November 5, 2012 to November 7, 2012. *Id.* ¶¶ 6–8, 16. Although the parties negotiated and agreed to several important terms that would eventually be incorporated into the SPA in New York, the agreement was not signed in the state. *Id.* ¶ 16. Instead, on November 9, 2012, the parties executed the Original SPA, in counterparts, in their respective principal places of business. Decl. of Iker I. Arriola Penalosa ¶ 8.

Relevant to the instant litigation, "the language set forth in Section 5.9 of the Original SPA requiring the parties to use 'commercially reasonable efforts' to obtain the necessary antitrust approvals" from Mexican regulatory authorities was negotiated in New York. Decl. of Christopher M. Connor ¶ 16. Section 5.9 became central to the parties' dispute when, "[i]n July 2013, the Comision Federal Compentencia de Mexico [Mexico's antitrust regulator] denied a pending application . . . to approve the Transaction as it was originally designed." Decl. of Sean P. Hennessy ¶ 5.

In September 2013, the parties agreed to bifurcate the transaction by splitting into separate agreements the sale of Defendants' United States and Canadian enterprises from the Mexican businesses that still required regulatory approval. *Id.* On September 4, 2013, the parties met in New York and agreed to: new pricing terms; a closing date for the U.S. and Canadian portions of

2

the transaction; and an extension of the timeline to receive regulatory approval of the Mexican transaction. *Id.* ¶ 7. On September 16, 2013, after additional negotiations outside of New York, "the parties met in Cleveland, Ohio" where the Amended SPA and a separate agreement on the sale of the U.S. and Canadian businesses were executed. *Id.* ¶ 8. The Amended SPA included the same provision requiring regulatory approval that was initially discussed in New York as part of the negotiation for the Original SPA. Compl. ¶ 47.

By mid-2014 the parties had still not received approval from the Mexican authorities. On April 1, 2014, Defendants informed Plaintiffs that they intended to send a notice of breach of contract for failure to use commercially reasonable efforts to secure Mexican antitrust approval. *Id.* ¶ 71. On April 3, 2014, Plaintiffs filed this lawsuit in New York State Supreme Court, and Defendants subsequently removed it to this Court. *Id.* ¶ 74.

## STANDARD OF REVIEW

To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), Plaintiffs must make only a *prima facie* showing that Defendants are amenable to personal jurisdiction in New York. *See Banker v. Esperanza Health Sys., Ltd.*, 201 F. App'x 13, 15 (2d Cir. 2006). "Eventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial. But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993). "Where the court finds that there are sufficient minimum contacts to subject a defendant to personal jurisdiction, it is the defendant's burden to demonstrate that jurisdiction would be unreasonable under the

particular facts of the case." *House of Diamonds v. Borgioni, LLC*, 737 F. Supp. 2d 162, 168 (S.D.N.Y. 2010).

## DISCUSSION

To determine whether it has personal jurisdiction over a foreign defendant, "the court must look first to the long-arm statute of the forum state, in this instance, New York. If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997).

**I.      New York Long-Arm Statute**

Plaintiffs argue that jurisdiction lies under New York's long-arm Statute, C.P.L.R. § 302(a)(1). *See* Pls.' Mem 9–10. Under that provision:

> a nondomiciliary "transacts business" under [C.P.L.R. § ] 302(a)(1) when he *purposefully avails* [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws. No single event or contact connecting defendant to the forum state need be demonstrated; rather, the *totality of all defendant's contacts* with the forum state must indicate that the exercise of jurisdiction would be proper.

*Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (alterations and emphasis in original). As the New York Court of Appeals has noted, C.P.L.R. § 302(a)(1) is a "single act statute," and "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Deutsche Bank Sec., Inc. v. Mont. Bd. of Inv.*, 850 N.E.2d 1140, 1142 (N.Y. 2006) (internal quotation marks omitted). "Moreover, where there is a showing that business was transacted, there

must be a 'substantial nexus' between the business and the cause of action." *Pryor*, 425 F.3d at 166.

"New York courts place 'special emphasis on the locale of contract negotiations' when analyzing contracting activity for § 302(a)(1) purposes." *Jarolim v. Akris Inc.*, No. 14-CV-3361 (AT), 2015 WL 5821094, at *5 (S.D.N.Y. Sept. 9, 2015). Indeed, "courts have held that New York-based contractual negotiations can by themselves constitute the transaction of business in New York under Section 302(a)(1) if they substantially advanced or were substantively important or essential to the formation of the contract." *Body Beautiful, Inc. v. Fred Hayman Beverly Hills, Inc.*, No. 96-CV-8541 (MBM), 1997 WL 527784, at *4 (S.D.N.Y. Aug. 25, 1997) (internal citation and quotation marks omitted).

Plaintiffs argue that jurisdiction lies under Section 302(a)(1) because the SPA and the Amended SPA were negotiated at least in part in New York. Pls.' Mem. 10. Defendants retort that the "limited meetings that occurred in New York as part of a long process that started in Mexico City and concluded in Cleveland and Mexico City, for the sale of a Mexican company, under Mexican law" are insufficient to confer jurisdiction under C.P.L.R. § 302(a)(1). Defs.' Mem. 11–12. Bearing in mind that the Court must accept Plaintiffs' allegations as true, Plaintiffs make the requisite *prima facie* showing under New York law.

According to the Plaintiffs, at the New York meetings—held in New York at Defendants' request—the parties "negotiate[d] key terms of the Original and Amended SPAs." Pls.' Mem. 10–11. New York courts routinely find that negotiations involving even fewer New York meetings than are alleged here suffice for jurisdiction, so long as they were substantive. *See, e.g., Topnotch Tennis Tours, LLC v. Glob. Tennis Connections Ltd.*, No. 13-CV-4844 (SLT), 2014 WL 6389587, at *4 (E.D.N.Y. Nov. 14, 2014) (finding jurisdiction based on a one hour meeting at a tennis

match); *SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 549 (S.D.N.Y. 2003) (finding jurisdiction after one initial but substantive meeting in New York); *Nat'l Cathode Corp. v. Mexus Co.*, 855 F. Supp. 644, 647 (S.D.N.Y. 1994) (same); *Edel Gems, Inc. v. Cont'l Jewelers, Inc.*, No. 91-CV-7030 (JSM), 1992 WL 88174, at \*3 (S.D.N.Y. Apr. 20, 1992) (finding jurisdiction after two meetings).

Plaintiffs also adequately plead a "substantial nexus" between the New York meetings and the alleged harm because Section 5.9 of the SPA—"the exact contract provision at issue in this action"—was negotiated in New York as part of the Original SPA and incorporated into the Amended SPA. Pls.' Mem. 10. That the identical term was incorporated into the Amended SPA based on discussions outside of New York does not alter this analysis. *See Bankers Trust Co. v. Nordheimer*, 746 F. Supp. 363, 367 (S.D.N.Y. 1990) (asserting personal jurisdiction because a second agreement made outside of New York "cover[s] the same obligation" as that made in New York); *Room Serv. Movies, Inc. v. Whiting*, No. 84-CV-2876 (WCC), 1985 WL 2030, at \*4 (S.D.N.Y. July 18, 1985) (asserting jurisdiction based on a violation of a contract negotiated outside New York because the "terms of the earlier agreement [made in New York] were carried forward into the later contract").

Defendants place great weight on the fact that the contract was not executed by them in New York and that the concluding negotiations for the contract were not conducted in New York. *See* Defs.' Mem. 12–13. As the Second Circuit has found, however, "[j]ust as it is unnecessary for the acts constituting the breach of contract to take place in New York in order for a New York court to sustain personal jurisdiction, it is unnecessary that final negotiations or indeed execution of the contract take place in New York." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55,

60 (2d Cir. 1985). Plaintiffs, therefore, meet their burden of establishing that Defendants "transacted business" in New York within the meaning of New York's long-arm statute.

## II.   Due Process

Even after concluding that "personal jurisdiction is proper under § 302(a)(1) of the New York long-arm statute, this Court must make the ultimate determination whether this jurisdiction satisfies constitutional due process." *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007). "As the Second Circuit has noted, the due process test for personal jurisdiction 'has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry.'" *Foot Locker Retail, Inc. v. SBH, Inc.*, No. 03-CV-5050 (DAB), 2005 WL 91306, at *5 (S.D.N.Y. Jan. 18, 2005) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). "The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002).

### A.   Minimum Contacts

"Due process considerations require that the defendant 'have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Where "the claim arises out of, or relates to, the defendant's contacts with the forum . . . minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels Lambert*, 305 F.3d at 127 (internal quotation marks and citations omitted). Importantly, "it is the defendant's conduct that must form the necessary connection with

7

the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

Defendants argue that they could not reasonably anticipate being sued in New York "based on isolated negotiations here, where none of the parties was incorporated or headquartered in New York, neither transaction contemplated by the [Original or Amended SPA] nor the basis of the parties' dispute had anything to do with New York, and the parties agreed to arbitrate disputes in Texas under the [International Court of Arbitration] Rules and be bound by Mexican law." Defs.' Mem. 14. Plaintiffs nonetheless maintain that the New York meetings are sufficient.

The Court's assertion of personal jurisdiction over Defendants would comport with the minimum contacts requirement "for the same reasons that it satisfies New York's long-arm statute." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010).  As described above, New York courts require that a defendant "purposefully avails [himself] of the privilege of conducting activities within [New York]" to have "transact[ed] business" under Section 302(a)(1). *Pryor*, 425 F.3d 158. Due process contains a similar "'purposeful availment' requirement [that] ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The parties' meetings in New York, which Plaintiffs allege were held in the forum at Defendants' request, meet the purposeful availment standard under both New York and federal law.  Although they were not dealing with a New York corporation, nor negotiating an agreement to be governed by New York law, Defendants' physical presence in the forum cannot be said to be random, fortuitous, or attenuated. *See Walden*, 134 S. Ct. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State.").

8

### B.    Reasonableness

"Where a defendant has purposefully directed its activities at the forum state, it may still defeat jurisdiction on due process grounds. To do so, however, it 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Licci*, 732 F.3d at 173 (quoting *Burger King Corp.*, 471 U.S. at 477). In *Asahi Metal Industries Company v. Superior Court of California, Solano County*, 480 U.S. 102 (1987), "[t]he Supreme Court [] set forth five factors that must be considered when determining the reasonableness of a particular exercise of jurisdiction":

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chloe*, 616 F.3d at 173 (citing *Asahi Metal Indus. Co.*, 480 U.S. at 113–14); *accord Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) ("[T]he court must evaluate the following [*Asahi*] factors as part of this 'reasonableness' analysis."). Defendants assert that all five factors weigh against an exercise of jurisdiction. Plaintiffs (after failing to even address the factors in their briefing) have been unable to persuade the Court otherwise. Ultimately, analysis of the *Asahi* factors—not one of which weighs in favor of the Court's exercise of personal jurisdiction over Defendants—mandates dismissal of this action.

First, the exercise of personal jurisdiction would impose a significant burden on Defendants, companies which are organized and based in Mexico. "Forcing a wholly foreign company with no day-to-day operations to litigate in New York is no small burden." *In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 825–26 (3d Cir. 2005). Nonetheless, "the conveniences of modern communication and transportation ease what would

9

have been a serious burden only a few decades ago." *Metro. Life Ins. Co.*, 84 F.3d at 574. Therefore, although "this factor cuts slightly in favor of the defendant in the instant case . . . taken alone, it falls short of overcoming the plaintiff's threshold showing of minimum contacts." *Id.*

Second, New York has no interest in adjudicating this case. The touchstones of state interest are lacking here: neither party is a citizen of New York, *see Asahi Metal Indus. Co.*, 480 U.S. at 114 ("Because the plaintiff is not a . . . resident [of the venue state, its] legitimate interests in the dispute have considerably diminished."); the agreements in question selected Mexican as opposed to New York law to govern them, *see id.* (finding a lack of jurisdiction where choice-of-law principles may have led to the use of foreign law); the contracts were not executed in New York, *see Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir. 1985) (noting that a stronger "basis for jurisdiction" would exist "if the defendants, in addition to their existing New York contacts, were physically present in New York when they executed the contract"); the agreement calls for arbitration outside of New York, *see Happy Merch. Ltd. v. Far E. Shipping Co.*, No. C-94-3927, 1995 WL 705131, at *4 (N.D. Cal. Nov. 8, 1995) (finding jurisdiction unreasonable where the agreement called for arbitration in Russia, an alternative and available forum); and New York law will not be implicated as the complaint seeks only a declaratory judgment on contract interpretation governed by Mexican law, *see Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007) ("The Declaratory Judgment Act—not state declaratory judgment law—provides the procedural mechanism for granting declaratory relief in federal diversity cases."). Plaintiffs have identified no interest that New York may have in the adjudication of its claim and the Court perceives none. Accordingly, "this factor weighs heavily against the reasonableness of the court's exercise of . . . jurisdiction" over Defendants. *Metro. Life Ins. Co.*, 84 F.3d at 574.

Third, a New York court is no more convenient or efficient than the alternatives. Plaintiffs argue that "litigating in New York . . . would generally be easier, more expeditious, and cheaper for Sherwin-Williams." Decl. of Sean P. Hennessy ¶ 12. But Plaintiffs do not explain why New York is more convenient and efficient than the other forums available. Mexico, whose laws govern the parties' agreement, is undoubtedly the most suitable forum for settling contested issues of Mexican law, but Mexico is not the only alternative forum potentially available. While Plaintiffs assert that New York is "the forum closest to Sherwin-Williams' headquarters home in which Sherwin-Williams was confident that the Comex Sellers were subject to personal jurisdiction," *id.* ¶ 12, they fail to explain why jurisdiction would not lie in their home state of Ohio. Indeed, courts in New York and Ohio have noted that New York's long-arm statute, "is substantially similar to the Ohio long-arm statute," which allows a court to exercise personal jurisdiction over any "cause of action arising from the person's . . . [t]ransacting any business in this state.'" *McCloud v. Lawrence Gallery, Ltd.*, No. 90 CIV. 30 (KMW), 1991 WL 136027, at *6, 20 n.9 (S.D.N.Y. July 12, 1991) (quoting Ohio Rev. Code § 2307.382(1)); *Stewart v. Bus & Car Co.*, 19 Ohio Misc. 129 n.21 (N.D. Ohio 1968) ("[The] New York long-arm statutes, as indicated earlier, are quite similar to Ohio's . . . ."). Because, by Plaintiffs' own admission, "the parties met in Cleveland, Ohio where the Amended SPA and the U.S. and Canada [agreements] were both executed on September 16, 2013," Decl. of Sean P. Hennessy ¶ 8, the case for jurisdiction under Ohio's long arm statute would be similar if not stronger than it is here. *See The Andersons, Inc. v. Demrex Indus. Servs., Grp., LLC*, 590 F. Supp. 2d 963, 967 (N.D. Ohio 2008) ("He came into this state to finalize a business deal. Doing so, he submitted to the jurisdiction of courts in Ohio."); *Special Aviation Sys., Inc. v. Aircraft Structures Int'l Corp.*, 323 F. Supp. 2d 839, 843 (N.D. Ohio 2004) ("Because the existence of a 'contract' between parties falls under the umbrella of 'transacting business,' it

logically follows that defendant's contract with [plaintiff], an Ohio corporation, establishes personal jurisdiction over defendant in Ohio under subsection (1) of the Ohio long-arm statute." (internal citation omitted)). In contrast to the analysis required in New York, however, a reasonableness inquiry undertaken by an Ohio court could more easily favor Plaintiffs because the forum would have a greater interest in a case brought by one of its citizens and contains much of the evidence and witnesses at issue. *See* Decl. of Sean P. Hennessy ¶¶ 10–11.[1] To the extent Plaintiffs argue that New York is the most mutually convenient and efficient forum for the parties, such an argument is unavailing in light of Defendants' protestations to the contrary and the lack of a forum selection clause indicating otherwise. *See Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005) ("[D]efendant irrevocably waived its right to challenge personal jurisdiction and venue when it voluntarily consented and agreed to the forum selection clause provided for in the Agreement.").

In *Metropolitan Life Insurance Company v. Robertson-Ceco Corporation*, the Second Circuit rejected a plaintiff's claim for convenience and efficiency in Vermont because the plaintiff was not a citizen of the forum and "it ha[d] not identified any witnesses or other evidence more convenient to that forum." 84 F.3d at 574. While the plaintiff argued that the forum's statute of limitations made Vermont the only forum available, the Second Circuit held that it "fail[ed] to see how the plaintiff's interests in proceeding in a convenient forum would be served by subjecting the defendant to suit in Vermont." *Id.* Plaintiffs' argument regarding the convenience of litigating in New York is equally unavailing here as New York claims neither Plaintiffs or Defendants as

---

[1] Although Sherwin-Williams (Caribbean) N.V. is also a plaintiff and jurisdiction might lie in Curacao where it is incorporated and has its principal place of business, *see* Compl. ¶ 15, this entity "was formed only to hold [Defendants] assets in the event the transaction at issue was consummated" and "had no independent role in negotiating the contracts at issue separate from Sherwin-Williams." Decl. of Sean P. Hennessy ¶ 13. Thus, because, "Sherwin-Williams Caribbean is a party to this case only because it is a party to the contracts at issue," *id.*, and Defendants do not argue that jurisdiction should lie in Curacao, the Court will address only the Sherwin-Williams parent corporation based in Ohio.

citizens, nor contains any of the evidence or witnesses at issue. Indeed, convenience and efficiency are even more lacking here because, unlike in *Metropolitan*, other forums are available for Plaintiffs' claim, including potentially one other in the United States. *See Asahi Metal Indus. Co.*, 480 U.S. at 114 (noting that plaintiff had "not demonstrated that it is more convenient for it to litigate its [ ] claim . . . in California rather than" abroad).

Fourth, in evaluating the judicial system's interest in obtaining an efficient resolution, "courts generally consider where witnesses and evidence are likely to be located." *Metro. Life Ins. Co.*, 84 F.3d at 574–75. This factor strongly favors declining jurisdiction because, as Plaintiffs recognize, "[m]uch of the evidence that Sherwin-Williams will present in support of its claim in this lawsuit is located in Ohio" and "a majority of Sherwin-Williams' witnesses reside in Ohio." Decl. of Sean P. Hennessy ¶¶ 10–11.

Finally, the shared interest of the states in furthering substantive social policies weighs, if in either direction, slightly against the exercise of jurisdiction. "When the entity that may be subject to personal jurisdiction is a foreign one, courts consider the *international* judicial system's interest in efficiency and the shared interests of the *nations* in advancing substantive policies." *Gucci Am., Inc. v. Weixing Li*, No. 10-CV-4974 (RJS), 2015 WL 5707135, at *9 (S.D.N.Y. Sept. 29, 2015). As the Supreme Court has noted, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi,* 480 U.S. at 115. While neither party has identified a substantive social policy implicated by the exercise of jurisdiction in this case, the parties' agreements are governed by Mexican law. *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 438 (S.D.N.Y. 1996) (noting, in evaluating the fifth reasonableness factor, that "Canada unquestionably has a strong interest in enforcing its own intellectual property laws").

13

Because none of the five reasonableness factors weigh in favor of exercising jurisdiction, Defendants have made a compelling case that jurisdiction would be unreasonable in these circumstances. Plaintiffs fail to cite a case, and this Court is unaware of one, in which a court found personal jurisdiction existed when all five of the *Asahi* factors counseled against its exercise. Indeed, Plaintiffs cite only one case, decided more than ten years before the Supreme Court's opinion in *Asahi*, in which a New York court exercised jurisdiction over a lawsuit brought by a non-New York plaintiff. *See* Pls.' Mem. 10 n.2 (citing *Nat'l Iranian Oil Co. v. Commercial Union Ins. Co. of New York*, 363 F. Supp. 129, 130 (S.D.N.Y. 1973) (lacking any due process analysis)).

In every other case Plaintiffs cite, the plaintiff is a citizen of or has its principal place of business in New York. *See* Pls' Mem. 9–13 (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 28 (2d Cir. 1996) (New York plaintiff); *Landau v. New Horizon Partners, Inc.*, No. 02-CV-6802 (JGK), 2003 WL 22097989, at *10 (S.D.N.Y. Sept. 8, 2003) (same); *Nat'l Cathode Corp.*, 855 F. Supp. at 645 (same); *Room Serv. Movies, Inc.*, 1985 WL 2030, at *4 (same); *Bialek v. Racal-Milgo, Inc.*, 545 F. Supp. 25, 28 (S.D.N.Y. 1982) (same); *Mattgo Enterprises, Inc. v. Aaron*, 374 F. Supp. 20, 21 (S.D.N.Y. 1974) (same); *Deutsche Bank Sec., Inc.*, 850 N.E.2d 1140, 1140 (same)). As is evident from these cases, the presence of a New York plaintiff drastically impacts the reasonableness inquiry; it practically ensures that the second, third, and fourth factors favor the plaintiff because the forum would have an interest in adjudicating the case, no forum would be more efficient for the plaintiff, and at least some witnesses and evidence are likely to exist in the forum.   Plaintiffs here cannot plead this significant—and often dispositive— jurisdictional fact.

The Second Circuit has cautioned that "[i]t would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within

14

the meaning of section 302(a)(1), and yet, in connection with the same transaction of business . . . the assertion of specific jurisdiction would somehow otherwise 'offend traditional notions of fair play and substantial justice,'" *Licci*, 732 F.3d at 170 (quoting *Int'l Shoe*, 326 U.S. at 316). It is for that reason that "dismissals resulting from the application of the reasonableness test should be few and far between." *Metro. Life Ins. Co.*, 84 F.3d at 575 (citing *Burger King Corp.*, 471 U.S. at 477). Where, however, the contacts that permit the imposition of jurisdiction under a minimum contacts analysis are weak, the importance of the reasonableness factors—each of which counsels against the exercise of jurisdiction here—are enhanced. *See Bank Brussels Lambert*, 305 F.3d at 129. In light of the lack of any reasonableness factors weighing in favor of jurisdiction, the Court finds it would be unreasonable to exercise jurisdiction over Defendants.

## CONCLUSION

For the foregoing reasons, the Court declines to exercise jurisdiction in New York over the Mexican Defendants who executed agreements in Ohio with Ohio Plaintiffs for shares in Mexican companies governed by Mexican law and subject to arbitration in Dallas. These facts confirm that "[t]his case presents the kind of exceptional situation envisaged by the Court in *Burger King:* here the existence of minimum contacts between the defendant and the forum state presents an arguably close question, but the analysis of the *Asahi* factors reveals that the exercise of personal jurisdiction would be decidedly unreasonable. Such cases may be unusual, but they remain good candidates for dismissal." *Metro. Life Ins. Co.*, 84 F.3d at 575. Defendants' motion to dismiss for lack of personal jurisdiction is therefore granted. The case is dismissed without prejudice to file in another forum. The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated:     January 28, 2016
           New York, New York

Ronnie Abrams
United States District Judge

16